IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLEE HARVEY, <br><br> Plaintiff, <br><br> v. <br><br> RELIANT BRIARCLIFF HOLDINGS, LLC d/b/a THE GROVE OF IRWIN, <br><br> Defendant. | Case No. <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW, comes the Plaintiff, Leslee Harvey, by and through her attorney, Sean L. Ruppert, Esquire, of Kraemer, Manes & Associates, LLC, and files this Complaint, alleging as follows:

### I. Nature of the Action

1. Plaintiff alleges employment discrimination on the basis of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.* Plaintiff alleges that Defendant subjected her to a hostile work environment that resulted in her constructive discharge from employment.

### II. Jurisdiction and Venue

2. This action arises under 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. § 12101 *et seq.* This Court has jurisdiction over Plaintiff's federal discrimination claims pursuant to 28 U.S.C. § 1331.

3. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action

is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. Parties

4. Plaintiff, Leslee Harvey, is an adult individual with a primary residence located at 1708 Cornell Street, Apartment 2, McKeesport, Pennsylvania 15132.

5. Defendant, Reliant Briarcliff Holdings, LLC d/b/a The Grove at Irwin, is a Pennsylvania Limited Liability Company with a regular place of business locate at 249 Maus Drive, Irwin, Westmoreland County, Pennsylvania 15642.

### IV. Facts

6. Plaintiff was hired in November 2015 by Defendant as a Certified Nurse's Aide ("CNA").

7. The essential job duties of a CNA include helping patients to transfer in and out of bed, as well as filing, charting, scheduling, and other various tasks.

8. At the time of her employment, Defendant employed two (2) African American employees, including Plaintiff. All other employees were Caucasian.

9. Since the beginning of her employment, Caucasian staff members refused to assist Plaintiff with various tasks; including lifting patients who required the assistance of more than one (1) staff member in order to transfer in and out of bed.

10. In addition to the Caucasian staff members' refusal to assist Plaintiff with patients, they would berate her for taking too long to move patients, even though she had no help.

11. Plaintiff was called "nigger" and other racial slurs by some Caucasian patients. These patients requested a Caucasian staff member to assist them.

12. Despite the degrading manner in which the patients treated Plaintiff, her supervisors still required her to assist these patients.

13. Upset over being called a "nigger" on a regular basis at work, Plaintiff threatened to quit to avoid the hostile environment.

14. Donald Betsy asked her to reconsider her resignation. Plaintiff agreed to continue her employment, in hopes that the situation would change.

15. Unfortunately, the situation became worse as the Caucasian staff members would attempt to have supervisors discipline Plaintiff.

16. Plaintiff was assigned to assist a known racist bariatric patient with showering, which required the coordination of three (3) staff members.

17. Plaintiff asked the patient when she would like to have her shower and the patient agreed to 1:00 p.m. that day.

18. When the patient's daughter arrived, and learned of Plaintiff's request, the daughter screamed, "What kind of aide are you, you don't know how to do your job, asking someone when she wants to shower."

19. The following day, Plaintiff was written up for "making a resident upset."

20. This discipline is in stark contrast to Caucasian staff members who have committed worse actions, such as an employee not showing up to work for nine days without calling in, or another employee overdosing on drugs in the restroom. Neither employee was disciplined.

21. Several Caucasian staff members took a picture of an African American patient in the shower, superimposed monkey heads on that patient, and distributed the pictures through a social media application called SnapChat.

22. Comparing African Americans to monkeys is a means of degrading them as being subhuman.

23. After this incident, all employees were required to complete a resident abuse training which consisted of watching a video.

24. Caucasian employees were permitted to complete the training at their convenience.

25. During this time, Plaintiff's supervisors were aware that she was taking final exams in order to graduate from school, and was unable to complete the training that week.

26. Plaintiff was removed from the schedule until she completed the training, even though Caucasian employees were not removed from the schedule pending their completion of the training.

27. When Plaintiff completed the training, she resumed working and went to check her patients' vitals. A staff member approached Plaintiff on one of her first days back and screamed at her for "not working."

28. Believing that management had taken no meaningful steps to protect her from regular discrimination, Plaintiff resigned her employment due to the racial discrimination and hostile work environment.

29. During the course of her employment, Plaintiff complained to management approximately five (5) times about the hostility and working conditions, however, her complaints were dismissed or ignored.

30. The Defendant hired African American aides, however, they would resign within a couple of weeks due to the same racial discrimination Plaintiff experienced.

31. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") at Charge No. 533-2017-00491, and requested the same be cross-filed with

the Pennsylvania Human Relations Commission. A Notice of Right to Sue was mailed from the EEOC on July 26, 2017 thereby exhausting Plaintiff's administrative remedies.

## COUNT I
### Title VII of the Civil Rights Act ("Title VII")
### 42 U.S.C. § 2000(e) et seq.
### Race Discrimination – Hostile Work Environment

32. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

33. Plaintiff is African American, and therefore protected by Title VII against discrimination based on her race.

34. Defendant paid wages to Plaintiff in accordance with a regular payroll period in exchange for work performed by Plaintiff within the regular course of the Defendant's business. Plaintiff is therefore an employee, and the Defendant an employer, within the meaning of Title VII.

35. The Defendant employs more than fifteen (15) individuals as employees, and is therefore subject to the obligations and restrictions imposed by Title VII.

36. Since the beginning of her employment, Plaintiff was discriminated because of her race in the following ways:

   a. Caucasian staff members refused to assist Plaintiff with various tasks, including lifting patients who required the assistance of more than one staff member;

   b. Plaintiff was called "nigger" and other racial slurs by some Caucasian patients. Despite knowing that certain patients were regularly calling Plaintiff a "nigger," Plaintiff's supervisors required Plaintiff to assist these patients, ensuring that she would continue to be called a "nigger" on an almost daily basis;

   c. Caucasian staff members would tell supervisors that she was "at the kiosk playing around" if I would sit for moment after a sixteen-hour day. Historically, Caucasians have stereotyped African Americans as being lazy as a means of degrading them;

    d. Plaintiff would be told by Caucasian supervisors to "do my work" if I sat down to complete my required charting and paperwork. This is a reference to slavery when African Americans were forced by Caucasians to perform labor;

    e. Caucasian staff members would not receive write ups or reprimands for talking for extended periods of time in the halls and at the nurses' stations;

    f. Caucasian staff members would call Plaintiff "lazy" because she could not life a 400-pound bariatric patient on her own. Historically, Caucasians have stereotyped African Americans as being lazy as a means of degrading them;

    g. Several Caucasian staff members took a picture of an African American patient in the shower, superimposed monkey heads on that patient, and distributed the pictures through a social media application called SnapChat. Comparing African Americans to primates is a way of degrading them as being subhuman.

37. The severe and continuous nature of this harassment constitutes a Hostile Work Environment under Title VII.

38. Plaintiff suffered damages, including emotional damages, directly and proximately caused by the Defendant's actions.

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in her favor, and against the Defendants, and award all available damages, including: compensatory damages, punitive damages, court costs and attorney fees, pre-judgment and continuing interest, and any other relief which the Court deems necessary and proper.

## COUNT II
### Title VII of the Civil Rights Act ("Title VII")
### 42 U.S.C. § 2000(e) et seq.
### Race Discrimination – Constructive Discharge

39. The averments contained in the preceding paragraphs are hereby incorporated as though set forth at length herein.

40. Plaintiff is African American, and therefore protected by Title VII against discrimination based on her race.

41.   Defendant paid wages to Plaintiff in accordance with a regular payroll period in exchange for work performed by Plaintiff within the regular course of the Defendant's business. Plaintiff is therefore an employee, and the Defendant an employer, within the meaning of Title VII.

42.   The Defendant employs more than fifteen (15) individuals as employees, and is therefore subject to the obligations and restrictions imposed by Title VII.

43.   Since the beginning of her employment, Plaintiff was discriminated because of her race in the following ways:

   a. Caucasian staff members refused to assist Plaintiff with various tasks, including lifting patients who required the assistance of more than one staff member;

   b. Plaintiff was called "nigger" and other racial slurs by some Caucasian patients. Despite knowing that certain patients were regularly calling Plaintiff a "nigger," Plaintiff's supervisors required Plaintiff to assist these patients, ensuring that she would continue to be called a "nigger" on an almost daily basis;

   c. Caucasian staff members would tell supervisors that she was "at the kiosk playing around" if I would sit for moment after a sixteen-hour day. Historically, Caucasians have stereotyped African Americans as being lazy as a means of degrading them;

   d. Plaintiff would be told by Caucasian supervisors to "do my work" if I sat down to complete my required charting and paperwork. This is a reference to slavery when African Americans were forced by Caucasians to perform labor;

   e. Caucasian staff members would not receive write ups or reprimands for talking for extended periods of time in the halls and at the nurses' stations;

   f. Caucasian staff members would call Plaintiff "lazy" because she could not life a 400-pound bariatric patient on her own. Historically, Caucasians have stereotyped African Americans as being lazy as a means of degrading them;

   g. Several Caucasian staff members took a picture of an African American patient in the shower, superimposed monkey heads on that patient, and distributed the pictures through a social media application called SnapChat. Comparing African Americans to primates is a way of degrading them as being subhuman.

44. Defendant failed to take any meaningful steps to prevent the severe and pervasive racial discrimination from continuing.

45. The severe and pervasive racial discrimination, and the Defendant's failure to take any meaningful steps to prevent it from occurring, created a working condition that was so intolerable that any reasonable person in the Plaintiff's position would feel compelled to resign.

46. Plaintiff was therefore constructively discharged within the meaning of Title VII.

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in her favor, and against the Defendants, and award all available damages, including: lost wages, front pay, compensatory damages, punitive damages, court costs and attorney fees, pre-judgment and continuing interest, and any other relief which the Court deems necessary and proper.

Respectfully Submitted,

/s/ Sean L. Ruppert
Sean L. Ruppert, Esq.
PA ID: 314380
**KRAEMER, MANES & ASSOCIATES LLC**
US Steel Tower
600 Grant Street, Suite 4875
Pittsburgh, PA 15219
(412) 626-5550 Direct
(412) 637-0144 Fax
sr@lawkm.com